UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:17CV-00193-JHM

RONALD HALL, AS
ADMINISTRATOR OF THE ESTATE
OF JACKIE HALL, DECEASED                                          PLAINTIFF

V.

THE EVANGELICAL LUTHERAN GOOD
SUMARITAN SOCIETY, INC., d/b/a GOOD
SAMARITAN SOCIETY-JEFFERSONTOWN, ET AL.            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant to dismiss [DN 9] and on a motion by Defendant to stay these proceedings and compel the parties to arbitrate this matter. [DN 11]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

Jackie Hall (hereinafter "Jackie") was a resident of Defendant, The Evangelical Lutheran Good Samaritan Society, Inc., d/b/a Good Samaritan Society-Jeffersontown (hereinafter "Good Samaritan"), from August 4, 2013, until June 4, 2016. On August 11, 2011, well before Jackie was a resident at Good Samaritan, she executed a "Durable General Power of Attorney" in which she named her children, Ronald and Mary Hall, as her attorney-in-fact. [DN 11-2]. This power of attorney ("POA") granted Ronald and Mary Hall the power to individually or jointly "do and perform all acts, deeds, matters and things whatsoever concerning my property and personal affairs necessary and advisable in the judgment of my said attorney in fact as fully and effectually to all intents and purposes as I could do if personally present and acting." (Id.) In addition to this grant of authority, Ronald and Mary were given the power to perform a number

of acts in Jackie's stead, including the ability to "ask, demand, sue for and recover, collect and receive all money, checks, deposits, accounts, interest, dividends, payments or benefits from any government or governmental agency, and any other credits of whatsoever kind or nature as are now or hereafter shall become due, owing or payable to me and to make, execute and deliver acquittances, receipts, releases, or other discharges therefore." (Id.) The POA also gave Ronald or Mary Hall authority to "[s]ettle, adjust or compromise any and all claims accounts or debts, owing to or by me." (Durable General Power of Attorney [DN 11-2] ¶¶ 1–3) (subdivisions omitted).

With this POA, Ronald Hall (hereinafter "Ronald") executed the paperwork for Jackie upon her admission to Good Samaritan on August 4, 2013. Included with Jackie's admission paperwork was a form titled "Resolution of Legal Disputes." [DN 11-3]. As part of the Resolution document, Ronald agreed, on behalf of Jackie, that "[a]ny legal controversy, dispute, disagreement or claim arising between the parties . . . in which Resident, or person acting on his or her behalf, alleges a violation of any right granted Resident under law shall be settled exclusively by binding arbitration" and that "any legal controversy, dispute, disagreement or claim of any kind . . . related to the care of stay at the Facility, shall be settled exclusively by binding arbitration." (Id.) The agreement also stated that "[t]his arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims and all allegations of fraud concerning entering into or canceling this Admission Agreement." (Id.)

On March 13, 2017, Plaintiff, Ronald Hall, as administrator of the estate of Jackie Hall, filed an action in Jefferson Circuit Court asserting negligence, medical negligence, and wrongful death claims against Defendants, Good Samaritan, Claude Mapp, in his capacity as administrator

of Good Samaritan, and John Does 1 through 3. Plaintiff alleges that on August 4, 2013, Jackie was admitted to Good Samaritan where she resided until June 4, 2016. Plaintiff claims that Jackie suffered personal injuries and ultimately death as a result of Defendants' failure to properly care for her. On March 30, 2017, Good Samaritan removed the action to this Court based on diversity jurisdiction. Plaintiff subsequently moved to remand the action to the Jefferson Circuit Court, and the Court denied the motion to remand. Good Samaritan has now filed two motions: a motion to dismiss and a motion to stay the proceedings and compel the parties to arbitrate this matter.

## II. MOTION TO DISMISS

Defendant has moved to dismiss the complaint arguing that it does not adequately plead sufficient facts to meet the plausibility standard set forth in Twombly and Iqbal. Defendant maintains that the complaint fails to provide it with any notice of any conduct on its behalf which could have caused injury to Jackie.

### A. Standard of Review

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Discussion

In relevant part, the complaint alleges that Jackie looked to Defendant for treatment of her total needs for custodial, nursing, and medical care, and those needs were not met by the facility. Specifically, Plaintiff contends that Good Samaritan negligently failed to deliver care, services, and supervision to Jackie, including failure to maintain all records on Jackie and failure to monitor or increase the number of nursing personnel. Plaintiff alleges that Good Samaritan failed to ensure that Jackie received, among other things, timely and accurate care assessments, prescribed treatment and medication in accordance with physician's orders, appropriate diet and nutrition, appropriate infection control measures and hygiene, timely and appropriate turning and repositioning, and warm and palatable meals. Additionally, Plaintiff contends that the Defendant failed to inform the physician and the family of significant changes in her condition and failed to discharge its other legal obligations. The complaint alleges that as a result of this wrongful conduct, Jackie suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including infections, falls, fracture, skin impairments, and ultimately death. Plaintiff also alleges that Jackie suffered unnecessary loss of personal dignity and extreme pain and suffering. Based on these facts, Plaintiff asserts negligence, medical negligence, corporate negligence, and wrongful death claims against Good Samaritan.

Construing the complaint in the light most favorable to Plaintiff, the Court finds the

complaint sufficiently pleads "'factual content that allows the Court to draw a reasonable inference that the Defendant is liable for the misconduct alleged." Frierson v. Evangelical Lutheran Good Samaritan Soc'y, Inc., 2013 U.S. Dist. LEXIS 161412. *2 (W.D. Ky. Nov. 13, 2013)(citation omitted).  Contrary to Defendant's argument, the complaint is sufficient to put Defendant on notice that Plaintiff claims that Good Samaritan breached its duty with respect to the care and treatment of Jackie and the breach resulted in the injuries and death of Jackie.  In short, the Court finds that the allegations contained in Plaintiff's complaint are sufficient to meet the standard set forth in Iqbal and Twombly.  Accordingly, the motion to dismiss is denied.

### III.  MOTION TO STAY AND COMPEL ARBITRATION

**A. Wrongful Death Claim**

The Court now turns to the Defendant's motion to compel arbitration, addressing first the claim for wrongful death.  A review of the case law reflects that Ronald is not required to arbitrate the wrongful death claim.  In Ping v. Beverly Enterprises, Inc., 376 S.W.3d 581 (Ky. 2012), the Kentucky Supreme Court held that a wrongful death claim does not derive from any claim on behalf of the decedent but instead belongs to the beneficiary under the wrongful death statute. KRS § 411.130(2). Accordingly, the wrongful death beneficiaries "do not succeed to the decedent's dispute resolution agreements" and are not bound by the decedent's agreement to arbitrate. Ping, 376 S.W.3d at 600. The Sixth Circuit likewise has held that a beneficiary is not required to arbitrate the wrongful-death claim and that this rule is not preempted by the Federal Arbitration Agreement.  Richmond Health Facilities v. Nichols, 811 F.3d 192, 197–98 (6th Cir. 2016). Thus, the Plaintiff is not required to arbitrate the claim for wrongful death, as the beneficiaries to whom that claim belongs have not consented to arbitrate.

**B. Decedent's Personal Claims**

Next, the Court turns to the remaining claims asserted by Plaintiff. The Resolution of Legal Disputes Agreement provides that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, shall govern the agreement. (Resolution of Legal Disputes, ¶A, DN 11-3.) The FAA "'manifests a liberal federal policy favoring arbitration agreements.'" Yaroma v. Cashcall, Inc., 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015)(quoting Masco Corp. v. Zurich American Ins. Co., 382 F.3d 624, 626 (6th Cir. 2004)). "Section 2 of the FAA states that arbitration clauses in commercial contracts 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. § 2). "Under § 4, when a party is 'aggrieved by the failure of another party to arbitrate under a written agreement for arbitration,' that party 'may petition a federal court for an order directing that such arbitration proceed in the manner provided for' by the contract." Id. (quoting Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 4) (internal quotation marks omitted)). The FAA "places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." Rent–A–Center, 561 U.S. at 67.

Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." Masco Corp. v. Zurich American Ins. Co., 382 F.3d 624, 627 (6th Cir. 2004) (quoting Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003)). This review requires the Court to determine first whether "'a valid agreement to arbitrate exists between the parties,' and second whether 'the specific dispute falls within the substantive scope of the agreement.'" GGNSC Louisville Camelot, LLC v. Coppedge, 2017 WL 3430579, at *4 (W.D. Ky. Aug. 9, 2017)(quoting Masco, 382 F.3d at 627). "'Because arbitration agreements are fundamentally contracts,' the Court must 'review the enforceability of an arbitration agreement

according to the applicable state law of contract formation.'" Coppedge, 2017 WL 3430579, at *4 (quoting Seawright v. American Gen. Fin. Servs., Inc., 507 F.3d 967, 972 (6th Cir. 2007)).

Plaintiff does not appear to argue that the decedent's personal claims fall outside the scope of the arbitration agreement; rather, Plaintiff argues that no valid arbitration agreement exists between Ronald as POA for Jackie and Defendant because the POA did not give Ronald the authority to enter into any arbitration agreement on Jackie's behalf. Thus, the issue that must be resolved is the proper scope of the POA and whether it encompasses the execution of the arbitration agreement.

Until recently, "Kentucky courts routinely 'declined to give effect to . . . arbitration agreements executed by individuals holding powers of attorneys.'" Preferred Care, Inc. v. Aaron, 2017 WL 3319378, at *7 (E.D. Ky. Aug. 3, 2017)(quoting Kindred Nursing Centers Ltd. P'ship v. Clark, 137 S. Ct. 1421, 1424-25 (2017)). The Kentucky Supreme Court had determined that "'a general grant of power (even if seemingly comprehensive) does not permit a legal representative to enter into an arbitration agreement for someone else.'" Id. (quoting Kindred, 137 S.Ct. at 1425). Rather, to form such a contract, the power of attorney must contain language specifically authorizing the representative to waive the principal's constitutional rights to access to the courts and to trial by jury. Coppedge, 2017 WL 3430579, at *4. However, the United States Supreme Court recently rejected this view. In Kindred Nursing Centers Ltd. P'ship v. Clark, 137 S.Ct. 1421 (2017), the Supreme Court held that "[t]he Kentucky Supreme Court's clear-statement rule [announced in Extendicare Homes, Inc. v. Whisman, 478 S.W.3d 306, 327 (Ky. 2015)] . . . fails to put arbitration agreements on an equal plane with other contracts." Id. at 1426-1427. The Supreme Court held that such a rule "single[d] out arbitration agreements for disfavored treatment" and thus, violated the FAA. Kindred, 137 S.Ct. at 1425.

7

"Following Kindred, then, the proper inquiry is whether the grant of authority contained in the power of attorney is 'sufficiently broad to cover executing an arbitration agreement.'" Coppedge, 2017 WL 3430579, at *5 (quoting Kindred, 137 S.Ct. at 1429).

The grant of authority in the POA vesting Ronald with authority "to do and perform all acts, deeds, matters and things whatsoever concerning my property and personal affairs" as Jackie could do personally is a broad delegation of authority. This language unquestionably encompasses the power to enter into an arbitration agreement. Therefore, the Plaintiff had the requisite authority to enter into the Arbitration Agreement. See Coppedge, 2017 WL 3430579, at *5 (POA vesting attorney-in-fact with "full power and authority to do every act necessary, requisite, or proper" as the principal could do personally encompasses the power to enter into an arbitration agreement.); Pembroke Health Facilities, L.P. v. Ford, 2017 WL 2486354, * (W.D. Ky. June 8, 2017)(POA vesting attorney-in-fact with "full power . . . to transact, handle, and dispose of all matters" as the principal could do encompasses the power to enter into an arbitration agreement); Diversicare Healthcare Servs., Inc. v. Riley, 2017 WL 3317672, at *2 (Ky. App. Aug. 4, 2017)(POA vesting attorney-in-fact with "power . . . to do all things that [the principal] could do, including but not limited to" various acts described in non-exhaustive list held broad enough to encompass the authority to enter into an arbitration agreement); GGNSC Louisville St. Matthews v. Madison, 2017 WL 2312699, at *6 (W.D. Ky. May 26, 2017)(POA vesting attorney-in-fact with maximum power to perform any act on the principal's behalf that he could do personally including but not limited to "all claims and litigation, and any and all business transactions" held broad enough to encompass the authority to enter into an arbitration agreement). Furthermore, the POA also granted Ronald the authority to "demand, sue for and recover, collect and receive" all money due Jackie and to "settle, adjust or compromise any and

all claims accounts or debts, owing to or by" Jackie, which provides strong evidence of Jackie's intent to give Ronald authority with respect to legal matters well beyond the categories of health care and financial decisions. See GGNSC Stanford LLC v. Gilliam, 205 F. Supp. 3d 884, 892 (E.D. Ky. 2016). Thus, the Court finds that the POA was broad and granted Ronald sufficient authority to execute an arbitration agreement on Jackie's behalf.

**C. Stay**

Given the Court's decision, it is necessary to divide the claims for resolution. As explained above, the wrongful death claim is not subject to arbitration. Plaintiff's remaining claims for negligence, medical negligence, and corporate negligence against Defendant are compelled to arbitration. In the interest of judicial economy, the Court finds it appropriate to stay the entire action pending arbitration, including the wrongful death claim.[1] See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983) (whether to stay nonarbitrable claims is within court's "discretion to control its docket"). See also Crumpton v. Hurstbourne Healthcare, LLC, 2017 WL 1091790, at *3 (W.D. Ky. Mar. 22, 2017); Owensboro Health Facilities, L.P. v. Canary, 2017 WL 1015859, at *4 (W.D. Ky. Mar. 15, 2017); GGNSC Louisville St. Matthews, LLC v. Saunders, 2017 WL 2196752, at *10 (W.D. Ky. May 18, 2017)(staying the wrongful death claim in the interests of judicial economy and consistency).

**D. Limited Discovery**

If the Court were inclined to compel arbitration, Plaintiff requests limited discovery be allowed to obtain and review the agreed-upon arbitration rules, including the "neutral code of procedure available from The Evangelical Lutheran Good Samaritan Society." In response, Defendant represents that because the rules were originally referenced and agreed upon at the

---

[1] It does not appear that the remaining Defendants have been properly served in this action.

9

time of the decedent's admission to the long-term care facility, Good Samaritan has no objection to providing the agreed-upon rules. Accordingly, discovery is unnecessary.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant to dismiss [DN 9] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion by Defendant to stay these proceedings and compel the parties to arbitrate this matter [DN 11] is **GRANTED IN PART AND DENIED IN PART**. The entire action is **STAYED** and arbitration is **COMPELLED** regarding all claims except the claim for wrongful death. Consistent with the representation of defense counsel, the Defendant shall provide a copy of the agreed-upon arbitration rules to Plaintiff **no later than September 5, 2017.**

                                                                             *Joseph H. McKinley, Jr.*
                                                               **Joseph H. McKinley, Jr., Chief Judge**
                                                                  **United States District Court**

cc: counsel of record
                                                                                       August 28, 2017